# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON

**JAMES A. LUCAS,**

    **Plaintiff,**

v.                                        Case No. 2:17-cv-03144

**DAVID BALLARD, Warden, et al.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER AND NOTICE

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the plaintiff's Complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1), and his Motion to Amend Complaint (ECF No. 4). The plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia.

*Payment of filing fee or filing of application to proceed without prepayment thereof*

The undersigned notes that, although the plaintiff filed an Authorization to Release Institutional Account Information (ECF No. 2), he failed to either pay the applicable $400 filing fee or file an Application to Proceed Without Prepayment of Fees and Costs. It is hereby **ORDERED** that the plaintiff must either pay the applicable filing fee or file a properly completed Application to Proceed Without Prepayment of Fees and Costs, including having the Certificate section completed by the prison's Trustee Clerk, within

**10 days** of entry of this Order. The plaintiff is **NOTIFIED** that the failure to comply with this Order will result in the recommended dismissal of this matter pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

### *Initial screening of Complaint and Leave to Amend*

Pursuant to 28 U.S.C. § 1915A, the undersigned has conducted a preliminary review of the plaintiff's Complaint to determine if this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff

> armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679. This same standard applies to the review of complaints under 28 U.S.C. § 1915A.

Although *pro se* complaints must be liberally construed to permit the development of potentially meritorious claims, the court may not rewrite the pleading to construe claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nevertheless, in the interests of justice, the court may allow a *pro se* plaintiff the opportunity to amend his complaint in order to correct deficiencies in the pleading. *Gordon v. Leake*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Liberally construed, the undersigned believes that the plaintiff is attempting to assert two claims against the defendants. First, he appears to be challenging the utility and fairness of MOCC's inmate grievance process. However, in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), the United States Court of Appeals for the Fourth Circuit made it clear that inmates have no constitutional entitlement or due process right to access to a grievance procedure. Therefore, an inmate may not bring a claim under section 1983 alleging denial of a specific grievance process or alleged deficiencies in such process.

Accordingly, the undersigned **FINDS** that the plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to the plaintiff's claim concerning MOCC's grievance process itself, and that such claim is subject to dismissal under section 1915A.

However, the plaintiff also appears to be asserting a separate claim that the defendants violated his rights under the First Amendment of the United States Constitution by retaliating against him for previously utilizing the grievance process and by filing a lawsuit challenging certain conditions of his confinement at MOCC. To establish a First Amendment retaliation claim, a plaintiff must allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected the plaintiff's First Amendment rights; and (3) that there was a causal connection between the protected activity and the defendant's conduct (that is, that the exercise of the plaintiff's protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct). *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). The plaintiff must allege facts showing that the alleged retaliatory action either violated a clearly-established constitutional right or "constituted punishment for [his] exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Adams*, 40 F.3d at 75).

Prison officials may not retaliate against an inmate for filing a lawsuit. *See Turner v. Safley*, 482 U.S. 78, 84, 86 (1987); *see also Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978); *Russell v. Oliver*, 552 F.2d 115 (4th Cir. 1977). More recently, in *Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 546 (4th Cir. 2017), the Fourth Circuit specifically recognized that, while there is no constitutional right to access to grievance procedures, where an inmate does engage in such procedures, "a reasonable prison

4

official has fair warning that retaliating against who filed a prison grievance is unlawful." Accordingly, there is a clearly-established right under the First Amendment to be free from such retaliation.

In the instant Complaint, the plaintiff appears to be alleging that, after filing prison grievances, and, thereafter, filing a prior lawsuit in this federal court, the defendants took adverse action against the plaintiff by "banning" another inmate who was a member of the plaintiff's bluegrass band from using the prison's music room, and threatening the plaintiff with similar action, pursuant to an as-yet-unimplemented new policy denying inmates who are not IRPP compliant access to the music room. Specifically, the Complaint states in pertinent part:

> MOCC did not target Petitioner (that would make reprisal to [sic; too] obvious) but just as apparent is – all of MOCC's programs, one particular program was targeted, the music program, and in that program, the band room, **and more obvious still, one particular band was targeted – Petitioner's band.**
>
> MOCC's artifice virtually eliminates any chance of Petitioner's band playing open-house this year. The lead singer was banned from the band room (on 3/20/17) under very suspect circumstances. **To date (10 May, 2017) he is the only person still being punished for violating a "policy" that doesn't even exist yet.** [FN 3 – The inmate was banned from the band room on 3/20/17 for not being IRPP compliant (not current with the MOCC recommended classes). In counterpoint, part of the reply from MOCC to Petitioner's grievance **more than a month later (4/24/17)** was "IRPP compliance is going to be a requirement in the near future."]
>
> In support of the claim of *vindictive retaliation* are the following facts as I know them, to include any relevant facts in Enclosure 1:
>
> 1. The 1983 lawsuit filed on 23 January 2017 (Civil Action No. 2:17-1007) challenging the "security risk" excuse used by MOCC to ban the wearing of any type of head covering in extreme sunlight during open house.
>
> 2. The head wear ban was promulgated by the Assistant Warden of Security.

5

> 3. IRPP compliance is a concern of the <u>Education</u> Department (not the Security Department) falling under the purview of the Assistant Warden of Programs.
>
> 4. The senior staff member hosting the meeting on 3/20/17 that resulted in the loss of the band's lead singer was the Assistant Warden of Security. There were four other individuals present.
>
> 5. The Assistant Warden of Programs was not present.
>
> 6. The first change in the IRPP policy since its inception (seven plus years ago) and the very first program ever to be targeted came right on the heels of the lawsuit dissemination challenging the "security risk" issue.

(ECF No. 1 at 7).

The plaintiff further alleges that the policy was subsequently altered to require that the band room could only be used during an inmate's recreation time, and that he was refused entry on that basis. (*Id.* at 8 n.4). Finally, the Complaint alleges (in a section titled "Update") that, on May 19, 2017, a memo was posted on the band room door stating that IRPP compliance was required to enter the band room. The plaintiff contends that this memo "was not backed by any existing written DOC policy and was not signed by anyone with the authority to write DOC policy. According to gym workers, the order 'came down from the Asst. Warden of Security.'" (ECF No. 1 at 10).

Although the Complaint contains scant factual allegations concerning adverse action taken against the plaintiff himself, the undersigned **FINDS** that, upon amendment thereof as addressed herein, the plaintiff may be able to state sufficient facts to support a plausible First Amendment retaliation claim, such that this matter should proceed thereon.

The Complaint names the following defendants: David Ballard, the now former Warden at MOCC; Jim Rubenstein, the now former Commissioner of the West Virginia Division of Corrections ("WVDOC"); and Jeff Sandy, the current Secretary of the West

Virginia Department of Military Affairs and Public Safety, which is the state agency with oversight of the WVDOC.  However, the Complaint contains no allegations at all concerning any specific conduct by defendant Sandy and, concerning defendants Ballard and Rubenstein, the Complaint merely alleges that Ballard had the "opportunity to address the claim of vindictive retaliation, but chose instead to cover it up by 'accepting the avoidance of its mention altogether'" and that Rubenstein "chose instead to protect the status quo and cover up the Warden's cover up." (*Id.* at 8).

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must show that an individual defendant was acting under color of state law and personally deprived the plaintiff of a federally-protected civil right, privilege or immunity.  *American Mfr. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999).  Claims asserted against an individual solely because he or she is an employer or supervisor are not cognizable under section 1983.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

*Id.* at 799. Consequently, the plaintiff should not name a supervisor or administrator as a defendant unless he can demonstrate that he or she has personally violated the plaintiff's rights or their conduct satisfies the above factors.

Without more specific factual allegations, the claims against Ballard, Rubenstein, and Sandy sound in nothing more than *respondeat superior*, which is insufficient to support a claim of supervisory liability under section 1983. Moreover, the Complaint does not name as a defendant the Assistant Warden of Security who allegedly gave the order that IRPP compliance was required to enter the band room, or any other staff members who were directly involved in any alleged retaliation against the plaintiff.

On June 16, 2017, the plaintiff filed a document titled "Amendment," which the court construed as a Motion to Amend the Complaint. (ECF No. 4). The Motion to Amend first attempts to "correct" a paragraph on page 4-d of the initial Complaint (ECF No. 1 at 7) to identify the specific prison staff members who were present at a meeting on March 20, 2017 where the plaintiff's bandmate lost use of the band room. (*Id.* at 1). The Motion to Amend also contains a section titled "Update," which seeks to add additional factual allegations concerning conduct that occurred subsequent to the filing of the initial Complaint.

Specifically, the plaintiff alleges that, after voluntarily disassociating himself from the band room on May 19, 2017 (after seeing the memo on the door about the IRPP compliance requirement), on June 8, 2017, he was called into a meeting with Mr. Shane

8

Ryan, the gym recreation director at MOCC, who allegedly advised him that he could return to the band room if he signed a copy of the "band room rules." (*Id.* at 2). The plaintiff further alleges that he refused to sign the form because he was concerned that he would be accused of making a fraudulent misrepresentation because he was not IRPP compliant, and would not be so, due to his refusal to complete certain classes. (*Id.*)

The remainder of the Motion to Amend, similar to much of the initial Complaint, contains editorial comments and questions that do not comply with the pleading requirements of a Complaint or Amended Complaint under the Federal Rules of Civil Procedure. Although the undersigned has liberally construed the initial Complaint to allege a plausible federal constitutional claim of retaliation under the First Amendment, the allegations in the Complaint, and those in the Motion to Amend, are not in a format that addresses the plaintiff's First Amendment claim either chronologically or by defendant. Consequently, the Complaint's format, and the plaintiff's attempts to add additional allegations in piecemeal, makes it difficult for the Court and any potential defendants to ascertain their specific conduct that the plaintiff believes to be unlawful, and thus, it will be difficult for any particular defendant to respond thereto.

Accordingly, the undersigned **FINDS** that the pending Motion to Amend Complaint (ECF No. 4) is not in an appropriate form upon which to proceed, and therefore, that motion is **DENIED WITHOUT PREJUDICE**. Nonetheless, the undersigned **FINDS** that justice requires that the plaintiff be granted leave to file a proper Amended Complaint in an attempt to cure the various deficiencies in pleading as addressed below.

Accordingly, it is hereby **ORDERED** that, by **April 11, 2018,** the plaintiff may file an Amended Complaint, which shall identify, to the best of the plaintiff's information

and belief, each individual the plaintiff seeks to name as a defendant. The plaintiff must also state specific factual allegations about each defendant's actions or omissions, and allege, with some degree of particularity, how each named defendant was involved in the alleged deprivation of his rights.

Pursuant to Rule 10 of the Federal Rules of Civil Procedure, the plaintiff should state his claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances" and each type of claim should be set out in a separate count, to promote clarity. Fed. R. Civ. P. 10. The plaintiff is hereby **NOTIFIED** that it will be insufficient for him to simply refer to his prior Complaint, or additional documents previously filed, or to incorporate the same by reference in the Amended Complaint.

The Amended Complaint will supersede the original Complaint, and there must be <u>one integrated document</u> that will provide the defendants with notice of the claims and allegations against them. The plaintiff is further **NOTIFIED** that the failure to file an Amended Complaint as set forth herein may result in a recommendation that the initial Complaint be dismissed for failure to state a claim upon which relief can be granted and/or for failure to prosecute under Rule 41 of the Federal Rules of Civil Procedure.

Upon receipt, the undersigned will screen the Amended Complaint under 28 U.S.C. § 1915A before ordering service of process on any defendants.

The Clerk is directed to mail a copy of this Order to the plaintiff.

ENTER: March 21, 2018

Dwane L. Tinsley
United States Magistrate Judge